IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| JOSHUA DEBERNARDIS, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 15-cv-10808 ) |
| v. | ) ) ) |
| METABOLIC NUTRITION, INC. and IQ FORMULATIONS, LLC, | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Joshua DeBernardis ("Plaintiff"), on behalf of himself and all others similarly situated, through his undersigned attorneys, states as follows for his Class Action Complaint against Defendants Metabolic Nutrition, Inc. and IQ Formulations, LLC ("Defendants"):

## I. NATURE OF THIS ACTION

1. This is a consumer class action brought by Joshua DeBernardis on behalf of himself and all others similarly situated who purchased the dietary supplement Metabolic Nutrition Synedrex (the "Product") from Defendants.

2. Defendants engaged in unfair and/or deceptive business practices by misrepresenting the nature and quality of the Product on the Product label, and were unjustly enriched.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000.00,

exclusive of interest and costs, and because this is a class action in which a member of a class of plaintiffs is a citizen of a State different from any defendant.

4. Diversity jurisdiction exists because Plaintiff is a resident of Illinois and Defendants are citizens of another State.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants transact business and/or has agents within this District.

### III. PARTIES

6. Plaintiff Joshua DeBernardis is a resident of Illinois who purchased the Product for $37.99 in September of 2015 from Walgreens.

7. Defendant Metabolic Nutrition, Inc. is licensed in the State of Florida, with a principal place of business address at 10318 NW 55th Street, Tamarac, Florida 33351.

8. Defendant IQ Formulations, LLC is licensed in the State of Florida, with a principal place of business address at 10151 NW 67th Street, Tamarac, Florida 33321.

### IV. GENERAL ALLEGATIONS

9. Americans spend tens of billions of dollars a year on trying to keep in shape, including gym memberships, diets and dietary supplements.

10. The combined market for meal replacement and diet pills was an estimated $3.04 billion dollars in 2014.[1]

11. In such a competitive business environment, Defendants make an effort to differentiate the Product by including an illegal ingredient to entice consumers to choose the Product over its competitors.

---

[1] *See* http://www.prweb.com/releases/2011/5/prweb8393658.htm (last visited Nov. 23, 2015).

12. Defendants designed, manufactured, warranted, advertised and sold the Product throughout the United States, including the State of Illinois, and continue to do so.

13. The difference between the product Defendants expressly and/or implicitly purport to deliver, and the Product actually delivered, is significant.

**Defendants' Illegal Ingredient In The Product Synedrex**

14. Defendants, formulate, manufacture, distribute and sell the dietary supplement Synedrex.

15. Defendants boast on the label of the Product that it is a "Powerful Stimulant Weight Loss Solution," a "High Potency Thermogenic," and that it provides "Extreme Energy."



- 4 -

16. To deliver on these label claims, Defendants add the powerful and illegal stimulant MethylPentane Citrate, or more commonly known as DMBA.

**SUPPLEMENT FACTS**

Serving size: 1 Capsule    Servings per container: 45

| | Amount Per Serving | % DV |
|---|---|---|
| Vitamin B3 (as Niacin) | 20 mg | 100% |
| Vitamin B6 (as Pyridoxine HCl) | 4.25 mg | 212% |
| Vitamin B12 (as Cyanocobalamin) | 100 mcg | 1666% |
| Chromium (from Chromium Polynicotinate) | 175 mcg | 146% |

**SYNEDREX™**
SYNEDREX Physician Formulated Weight Loss Solution

| | | |
|---|---|---|
| Proprietary Blend | 920 mg | ** |
| Methylxanthine | | ** |
| Methylpentane Citrate | | ** |
| Sulbutiamine | | ** |
| Sandalwood Extract | | ** |
| Yohimbine Extract | | ** |
| Alpha Lipoic Acid | | ** |
| Poly-liodo-Thyronine | | ** |
| Meridextrine™ | | ** |

**No Daily Value Established.

Other Ingredients: DiPotassium Phosphate, MCMC, Silicon Dioxide, Magnesium Stearate, Titanium Dioxide, FD & C Blue 1, Red 40, TiO2, Gelatin.

Store product at room temperature. Do not expose to excessive heat or moisture.

17. As manufacturers and distributors of the Product, Defendants have an affirmative duty to comply with the United States Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA"), as well as any parallel State statute.

18. In 1994, the Dietary Supplement Health and Education Act (the "DSHEA") was passed into law, establishing a new framework governing the composition, safety, labeling, manufacturing, and marketing of dietary supplements.

19. Dietary supplements are defined by the FDCA as a "product (other than tobacco) intended to supplement the diet" that contains one or more of the following: (1) vitamins; (2) minerals; (3) and herb or other botanical; (4) an amino acid; (5) a supplement meant to increase total dietary intake; (6) a concentrate, metabolite, constituent, extract, or combination of any of the listed ingredient. 21 U.S.C. § 321(ff)(1).

20. Under the DSHEA, dietary ingredients that were marketed in the United States before 1994 may be used in dietary supplements without notifying the Food and Drug Administration ("FDA").

21. The stimulant DMBA was not marketed in the United States before 1994 and thus does not qualify for this exemption.

22. Notice of "new" dietary ingredients (*i.e.*, those not used in the United States before 1994) must be submitted to the FDA unless the ingredient has been "present in the food supply as an article used for food without being chemically altered." 21 U.S.C. § 350b(a)(1).

23. For dietary ingredients not used in the United States prior to 1994, the manufacturer or distributor, at least 75 days before the introduction of a New Dietary Ingredient ("NDI") into the market, must provide the FDA with information that demonstrates that the "history of use or other evidence of safety establish that the NDI when used under the conditions recommended or suggested in the labeling of the NDI will reasonably be expected to be safe." 21 U.S.C. §350b(a)(2).

24. After receiving information regarding a NDI, the FDA may then determine that the manufacturer or distributor has not provided an adequate basis to conclude that the NDI is reasonably expected to be safe, which would prevent the marketing of such NDI.

25. None of the Defendants provided the FDA the required NDI notification for DMBA.

26. Dietary supplements that contain undisclosed NDIs are considered adulterated for purposes of the FDCA.

27. Defendants were fully aware that DMBA was a NDI, but nevertheless included it in their Product. The failure to disclose this material fact to Plaintiff and Class members resulted in making the Product labeling misleading.

28. Pursuant to 21 U.S.C. § 321(f), the Product is a "food" regulated by the FDCA.

29. Defendants' false and misleading label statements violate 21 U.S.C. § 343(a) and the so-called "little FDCA" statutes adopted by many States[2], which deem food misbranded when "its labeling is false or misleading in any particular."

30. Illinois has expressly adopted the federal food labeling requirements as its own: "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21. Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

31. Pursuant to 410 ILCS 620/11, which mirrors 21 U.S.C. § 343(a), "[a] food is misbranded – (a) If its labeling is false or misleading in any particular."

32. The Illinois Consumer Fraud and Deceptive Business Practices Act also protects Defendants' consumers, and provides:

---

[2] *See, e.g.*, 410 ILCS 620/11.

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

33. Defendants' false, deceptive and misleading label statements are unlawful under several States' Consumer Fraud Acts.

34. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all State parallel statutes cited in this Complaint.

35. Defendants intended for Plaintiff and the Class members to be misled.

36. Defendants' misleading and deceptive practices proximately caused harm to the Plaintiff and the Classes.

## V. CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23 on behalf of the below-defined Classes:

> **National Class:** All persons in the United States who purchased the Product.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the Product.[3]

---

[3] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

>  **Illinois Subclass:** All persons in the State of Illinois who purchased the Product.

Excluded from the Classes are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

38. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the thousands to millions. The precise number of Class members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

40. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include:

    a. The true nature of the ingredients in the Product;
    b. Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;
    c. Whether Defendants' actions violate the State consumer fraud statutes invoked below;
    d. Whether Defendants were unjustly enriched at the expense of Plaintiff and Class members; and

e. Whether Defendants violated an express warranty to Plaintiff and Class members.

41. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

42. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to Defendants that are unique to Plaintiff.

43. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members he seeks to represent, he has retained counsel competent and experienced in complex class action litigation, and Plaintiff along with counsel will prosecute this action vigorously. Accordingly, Plaintiff and his counsel will fairly and adequately protect the Class' interests.

44. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue hardship and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing

incompatible standards of conduct for Defendants. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

45. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

46. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CAUSES OF ACTION

### COUNT I
### Violation Of State Consumer Fraud Acts
### (On Behalf Of The Multi-State Class)

47. Plaintiff incorporates each preceding paragraph as if fully set forth herein.

48. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class[4] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

49. Defendants intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

50. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

51. In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Violation Of The Illinois Consumer Fraud And Deceptive Business Practices Act
### (In The Alternative To Count I And On Behalf Of The Illinois Subclass)

52. Plaintiff incorporates each preceding paragraph as if fully set forth herein.

53. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "ICFA"), prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

54. Defendants intended that Plaintiff and each of the other members of the Class would rely upon their deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

---

[4] California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); (Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

55. As a result of the Defendants' use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

56. In addition, Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT III
### Unjust Enrichment
**(On Behalf Of The Illinois And National Classes)**

57. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

58. Plaintiff and Class members conferred benefits on Defendants by purchasing the Product.

59. Defendants received a substantial benefit in the form of payments from Plaintiff and members of the Classes for purchasing the Product.

60. Plaintiff and members of the Classes would not have purchased the Product if they had been aware of its misleading labeling, and the true nature and quality of the Product.

61. Defendants' retention of their benefits without providing the product Plaintiff and members of the Classes reasonably expected to receive would be unjust and inequitable.

62. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to the Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV
### Breach Of Express Warranty
**(On Behalf Of The Illinois And National Classes)**

63. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

64. Plaintiff and each member of the Classes formed a contract with Defendants at the time Plaintiff and the other Class members purchased the Products. The terms of the contract includes the promises and affirmations of fact made by Defendants on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Classes and Defendants.

65. Defendants purport through their advertising and packaging to create express warranties that the Product contained certain ingredients and provided certain benefits, which it did not.

66. All conditions precedent to Defendants' liability under this contract were performed by Plaintiff and the members of the Classes when they purchased the Product.

67. Defendants breached express warranties about the Product and its qualities because Defendants' statements about the Product were false and the Product does not conform to Defendants' affirmations and promises described above. Plaintiff and the Class members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product did and did not contain.

68. As a result of Defendants' breach of warranty, Plaintiff and Class members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel for the Classes;

B. Ordering Defendants to pay actual damages to Plaintiff and the other members of the Classes;

C. Ordering Defendants to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

D. Ordering Defendants to pay statutory damages, as provided by the applicable State consumer protection statutes invoked above, to Plaintiff and the other members of the Classes;

E. Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

F. Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Ordering such other and further relief as may be just and proper.

Dated: December 1, 2015　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　*/s/ Joseph J. Siprut*
　　　　　　　　　　　　　　　　　　　　Joseph J. Siprut
　　　　　　　　　　　　　　　　　　　　*jsiprut@siprut.com*
　　　　　　　　　　　　　　　　　　　　**SIPRUT PC**
　　　　　　　　　　　　　　　　　　　　17 N. State Street
　　　　　　　　　　　　　　　　　　　　Suite 1600
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　　　　　　　Phone: 312.236.0000
　　　　　　　　　　　　　　　　　　　　Fax: 312.878.1342

Nick Suciu III
*nicksuciu@bmslawyers.com*
**BARBAT, MANSOUR & SUCIU PLLC**
434 West Alexandrine
Suite 101
Detroit, Michigan 48201
Phone: 313.303.3472

*Counsel For Plaintiff*
*And The Proposed Putative Classes*

4837-7406-5963, v. 1